# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.
_____

**Rachelle Graves,**

    Plaintiff,

v.

**Springs Fabrication, Inc.**
**a Colorado Corporation,**

    Defendant.

## COMPLAINT

COMES NOW, Plaintiff, Rachelle Graves, and for her Complaint against the Defendant, alleges the following:

### Introduction

Plaintiff brings this action pursuant to 42 U.S.C. §1981 to redress violations of Ms. Graves' right to make and enforce contracts and work in an environment free from race discrimination.

### Jurisdiction

1. The Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 & 1343.

### Venue

1

2. The unlawful employment actions described below were committed in the State of Colorado. Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391(b).

**Parties**

3. Rachelle Graves is an African American female.

4. Springs Fabrication, Inc. is a Colorado corporation with its principal offices at 850 Aeroplaza Circle, Colorado Springs, Colorado.

**General Allegations**

5. Paragraphs 1 through 4 are incorporated herein.

6. Plaintiff was first employed as an Accounting Assistant for Springs Fabrication, Inc. as a temporary employee from March of 2017 until July of 2017.

7. While employed as a temporary employee Plaintiff was paid $12.35 per hour.

8. White employees with similar qualification who performed identical work during 2017 were paid as much as $17.00 per hour.

9. Plaintiff was later hired as a permanent employee by Springs Fabrication, Inc. and was employed as an Accounting Assistant from December 26, 2017 until March 8, 2018.

10. At Springs Fabrication in 2017 and 2018 it was customary for employees of the accounting department to be given keys to the accounting department suite of offices so that they could enter the suite of offices and clock in at their computers without delay and work after hours.

11. During the time that Plaintiff was employed as an Accounting Assistant in the accounting department she was never given a key to the accounting offices where her desk and computer were located.

12. When Plaintiff asked for a key to the accounting offices she was told that she did not need one.

13. Plaintiff was frequently delayed in clocking in after she arrived at work because she did not have a key to the accounting offices or access to her computer where she clocked in.

14. White employees performing similar work, even one hired after Ms. Graves, were provided keys to the accounting offices.

15. Not having a key to the accounting offices was a disadvantage to the Plaintiff because when she arrived at work and was ready to clock in she was prevented from clocking in and beginning her work.

16. Plaintiff could not clock in without locating another employee to open the office for her.

17. On Monday January 29, 2018 Plaintiff was called in to Scott Trapp's office and told that $950.00 in cash was missing from the petty cash box.

18. She was asked whether she knew anything about the missing money and was questioned about her whereabouts on the previous Thursday and Friday.

19. Scott Trapp asked her if she would return the money.

20. White employees who had access to the office where the petty cash was kept were not asked to return stolen money.

21. Plaintiff had not stolen the money and Springs Fabrication had no reason to suspect her of theft.

22. Upon information and belief Plaintiff was falsely accused because she is not white and is African American.

23. Following the false accusation Plaintiff's work station was moved from the accounting offices to a cubicle in the center of the office.

24. After her desk was moved to a cubicle, outside of the accounting offices, Plaintiff learned from a supervisor that other employees had been told to watch her.

25. On February 28, 2018 Scott Trapp approached her while she was sitting at her cubicle. He said "I need to speak to you about your attire."

26. After looking at her outfit he said "Never mind, I'm sorry." He walked away and Plaintiff heard him say to the Human Resources Manager, Cindy Alire, "There is nothing wrong with what she is wearing."

27. Cindy Alire, the Human Resources Manager, then exited her office and approached the Plaintiff. Ms. Alire grabbed the arm of Plaintiff's chair and pulled it back moving her back and spinning her around.

28. Cindy Alire said to the Plaintiff "I need to see what you are wearing." and "You cannot wear pajama pants to work."

29. Plaintiff who was shocked stated that "These aren't pajama pants."

30. In fact, Plaintiff was wearing dress pants. Her pants were new and were appropriate for work and were nicer than what most of the white employees wore to work.

31. Cindy Alire loudly announced, in a manner that other employees could hear that she was going to send out a dress code policy.

32. Plaintiff was very humiliated to have a Human Resources Manager announce that she was not dressed appropriately and that a dress code policy was required because of her actions.

33. Plaintiff began crying uncontrollably and went outside of the building.

34. Plaintiff spoke to the owner, Lori Neppl, and stated that she wanted to file a complaint. She told Lori Neppl that she thought that Ms. Alire was treating her poorly because she is African American.

35. Lori Neppl made excuses for Cindy Alire's behavior to the Plaintiff.

36. Plaintiff later received an email from Cindy Alire stating that she heard that Plaintiff wanted to make a complaint against her.

37. Ms. Alire stated falsely to the Plaintiff that she had received complaints from others about the Plaintiff's attire.

38. The following Tuesday Scott Trapp told the Plaintiff that she was being watched constantly by Springs Fabrication management.

39. Plaintiff was extremely upset to learn that she was being watched by management. The following day she called in and reported that she had a doctor's appointment and stated that she would bring a doctor's note to work the following day.

40. It was the usual practice at Springs Fabrication to excuse an employee's absence if the employee brought in a doctor's note explaining the absence when she returned to work.

41. White employees who presented doctor's notes excusing absences were not disciplined for missing work.

42. When Plaintiff returned to work on the following day her employment was terminated.

43. Plaintiff told her supervisor that she had a doctor's note.

44. She was told that it did not matter that she had a doctor's note.

45. Plaintiff was treated differently in the terms and conditions of her employment, including pay, scrutiny and personal hostility than white employees because of her race.

46. Plaintiff experienced emotional distress and depression as the result of working in a hostile environment.

**First Claim for Relief - Hostile Work Environment and Disparate Treatment Because of Race (42 U.S.C. §1981)**

47. Plaintiff realleges all prior paragraphs and incorporates them herein.

48. Plaintiff suffered an alteration in the terms and conditions of her employment when she was suspected of theft because of her race.

49. Plaintiff suffered a loss of opportunity to work extra hours and experienced hostility and suspicion from managers because of a false allegation of theft, which was made because of her race.

50. Plaintiff experienced a hostile work environment because of her race.

51. Plaintiff suffered economic losses and emotional distress as the result of racially hostile work environment.

52. Defendant's acts and omissions violated Plaintiff's right to make and

enforce contracts in the same manner as white citizens as guaranteed by 42 U.S.C. § 1981.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief, pursuant to 42 U.S.C. §§ 1981 and 1988, including:

a. Nominal damages;

b. Nonpecuniary and compensatory damages, including damages for emotional distress and consequential damages;

c. Back pay;

d. A declaration that Defendant's conduct violated Plaintiff's rights under 42 U.S.C. § 1981;

e. Pre- and post-judgment interest at the highest rate allowed by law;

f. Costs and reasonable attorneys fees; and

g. All other legal or equitable relief to which Plaintiff is entitled.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a jury trial for all issues triable by jury.

Respectfully submitted this 23rd day of April, 2019.

CORNISH & DELL'OLIO, P.C.

s/Donna Dell'Olio
Donna Dell'Olio # 10887
CORNISH & DELL'OLIO, P.C.
431 N. Cascade Avenue, Suite 1
Colorado Springs, CO 80903
Phone: (719) 475-1204
Fax: (719) 475-1264

        Email:  ddellolio@cornishanddellolio.com
        Attorneys for Plaintiff

Plaintiff's address:
6911 Millbrook Lane
Fountain, CO 80817